C. W. WISE ET AL. v. J. D. SHORT.

(Filed 4 May, 1921.)

**1. Wills—Letters—Animo Testandi—Signature—Holograph Wills.**

A letter written by the deceased to his brother, signed by him "Brother Alex," just before the deceased had gone to a hospital for treatment, saying, "Brother Richard, take care of yourself and stay with William at the store. I am going to the hospital on account of not feeling well. I hope God nothing happens, but if it does, everything is yours. Got some money in the bank, but don't know how much we owe on house. . . . I hope in a few days I will come back," etc., indicates the writer's present intention to dispose of his property, and is provable as his holograph will, when our statute has been complied with relating thereto.

**2. Courts—Inherent Powers—Interpreter—Wills—Records.**

The court has inherent power to appoint a duly qualified interpreter to act in that capacity upon the probate of a will written in a foreign language and offered for probate in the courts of this State. It is suggested that the original will be copied on the record with its translation.

**3. Mortgages—Deeds in Trust—Sales—Foreclosure—Statutes.**

Where a trust deed to secure money loaned on lands has been foreclosed, C. S., 2591, requires the sale be kept open for ten days for the tender of increased bids, etc., but on the facts of this appeal it appears that an irregularity in conveying the land before the expiration of the statutory time could not have prejudiced any of the parties, and, also, that they are concluded by the judgment upholding the validity of the transaction.

APPEAL by defendant from *Harding, J.,* at April Term, 1921, of MECKLENBURG.

This case comes here upon a case agreed, heard before *Judge Harding,* with reference to the title to a house and lot in the city of Charlotte, N. C., the plaintiffs having entered into an agreement with the defendant for the purchase of the same by him. The defendant, under advice

of counsel, declined to take title, for that the same was defective as to a one-half interest in the land purported to have been devised under a will made in the Syrian language by Alex. Salem to Richard Salem, predecessor in title of the plaintiffs; and further, that the other or second source of title to same one-half interest was defective, it being as follows: that the said Richard Salem having failed to pay the amount of the debt secured by the deed of trust due by him to his brother, the devisor in said will, the property was sold by the trustee and purchased by Richard Salem at public sale, but the defendant, through his attorney, objected to the fact that the deed made by the trustee was dated and recorded before the expiration of ten days after the public sale, and said deed of trust having been made after 1 May, 1915. These are the two principal points in controversy. It is admitted that the sale was otherwise regular and that there were no advance bids, and that the estate of the intestate has been duly settled, and that the property has passed through several *mesne* conveyances to the present owner. Judgment for plaintiffs, and defendant appealed.

*E. R. Preston for plaintiffs.*
*No counsel for defendant.*

WALKER, J., after stating the facts: The will, dated 6 October, 1918, is as follows:

"Brother Richard, take care of yourself and stay with William at the store. I am going to the hospital on account of not feeling well. I hope God nothing happens, but if it does, everything is yours. Got some money in the bank, but don't know how much we owe on house. Mr. Buchanan will tell you. We do not owe anything else except that. I hope in a few days I will come back. All papers at the same bank we deal with, Box 305. (Signed) Brother Alex."

This paper, though in the form of a letter, is sufficient, in substance, as a holograph will. It was written by the testator and found among his valuable papers and effects. He was about to enter a hospital for treatment when he wrote it, and was apprehensive that he would not survive it, though he expressed the hope that he would return to his home. The paper was evidently written and signed by him *animo testandi,* and he intended it to be his will. It contains evidence of his present intention to dispose of his property and to give it to his brother, Richard Salem, his own name being Alex. Salem. The paper was proved as a holograph will according to the statute, and recorded. That it is in form sufficient to operate as a valid will will appear from the following authorities: *In re Will of Ledford,* 176 N. C., 610; *In re Will of Bennett,* 180 N. C., 5, and cases cited therein; *Milon v. Stanley,* 17

21—181

L. R. A. (N. S.), 1126; Gardner on Wills, at p. 40; *Spencer v. Spencer,* 163 N. C., 88; *In re Will of J. Vestal Johnson, ante,* 303.

Gardner on Wills, *supra,* says: "So a letter written by a testator to a friend, authorizing him to take charge and dispose of the testator's property, and to sell and convey the same as his executor, properly attested, sufficiently evidences the testator's intention to dispose of his property, and may be probated as a will. But a letter, like any other instrument, to take effect as a will, must be executed in compliance with the requirements of the statute, and must express a genuine present and not merely an anticipated testamentary intent." Jarman on Wills (6 Ed.), at p. 21, expresses the same view, as follows: "The law has not made requisite to the validity of a will that it should assume any particular form, or be couched in language technically appropriate to its testamentary character. It is sufficient that the instrument, however irregular in form or inartificial in expression, discloses its testamentary character and the intention of the maker respecting the posthumous destination of his property; and if this appears to be the nature of its contents, any contrary title or designation he may have given to it will be disregarded." In this case the testator expresses the present intention that his brother, Richard Salem, should, at his death, have all of his estate. It was no direction to have a will written for him to that effect, but that he should take under the letter then written and signed by himself, and therefore the case falls directly within the operation of the principle set forth in the authorities above cited. The letter was signed "Brother Alex," but that is a sufficient signature as he adopted it as his own, and it is the same as if he had signed his own name in full. "The signing of a will in an assumed or fictitious name has been held sufficient, if the testator intended it as his signature." 40 Cyc., 1104. We need not go so far, as the signature itself is not assumed or fictitious, but clearly indicates the person who used it.

As to the translation of the will by an interpreter of the Syrian language, it is only necessary to say that the court possesses the power to appoint an interpreter for the proper transaction of its business, and any qualified person can be appointed and act in this capacity, as was done in this case. *Farrar v. Warfield,* 8 Martin (La.), p. 695. It appears that the interpreter was duly appointed and sworn. It is said in 15 Corpus Juris, at p. 871: "Provision is sometimes made by law for the appointment of an interpreter for designated courts or purposes; and even in the absence of express authority it is the right and duty of courts to employ and swear interpreters of foreign languages in cases where the necessity therefore arises. An interpreter must be competent to perform the duty assumed." It is considered to be among the inherent powers of the court to appoint an interpreter, if necessary

for it to be done, in order that the true meaning of the foreign language used by witnesses, or in documents, may be understood by the court and jury. 11 Cyc., 720. We suggest that the will in the original text should be copied on the record of wills in the clerk's office with the translated copy now there.

Richard Salem conveyed the land to E. R. Preston in trust to secure a debt due to W. F. Buchanan, and Preston, as trustee, sold the land under the power contained in the deed to Richard Salem, and conveyed the land to him.

The other question turns upon the proper construction of C. S., 2591, with reference to the special facts of this case. It is clear to us that it was intended by section 2591 to require that the sale be kept open for ten days, so that increased bids might be tendered during that time. But in this case it is admitted that there was no offer of an increased bid by any one, and Richard Salem was the person who received the deed from Mr. Preston and had it registered, so that as Alex. Salem's estate has been fully settled and Buchanan, the creditor of Salem, whose claim was secured by deed, has been paid, we cannot see how any one can be prejudiced by the failure of the trustee to keep the sale open for increased bids, or for the benefit of any creditors, and Richard Salem, who seems to be the only one having any right of objection to closing the sale earlier than the time fixed by the statute, was himself responsible for this irregularity.

We can, of course, decide this case so as to bind and conclude only those who are parties to it, but as the facts appear in the case agreed, the title of the plaintiffs to the lot seems to be valid, and sufficient to pass as a good and indefeasible one to the defendant by the deed from them to him. The estate of Alex. Salem having been finally settled, there being no unsatisfied creditors, and Richard Salem being estopped to assert any claim, we are unable to see that any cloud rests upon the title.

The court held the plaintiffs' title to be valid and indefeasible and gave judgment for the plaintiffs upon the admitted facts, and defendant appealed, and this Court, for the reasons stated, affirms the judgment.

Affirmed.