STATE OF NORTH CAROLINA
v.
MARIO L. GONZALEZ, Defendant.
No. COA08-1591
Court of Appeals of North Carolina.
Filed November 3, 2009
This case not for publication
Attorney General Roy A. Cooper, III by Assistant Attorney General J. Aldean Webster, III, for the State.
Irving Joyner, for defendant-appellant.
STROUD, Judge.
Defendant appeals from his convictions for two counts of trafficking in cocaine and one count of conspiracy to traffic in cocaine. Prior to entering a guilty plea on these charges, defendant filed a motion to suppress, which the trial court subsequently denied. Defendant appeals the trial court's denial of the motion, contending that the trial court erred when it denied his motion to suppress because the trial court's findings of fact do not support its conclusion of law. We conclude that the trial court had adequate grounds for denial of defendant's motion to suppress and affirm the trial court's ruling.

I. Background
On 30 July 2007, defendant was indicted for two counts of trafficking in cocaine and one count of conspiracy to traffic in cocaine. On 29 April 2008, defendant moved to suppress statements made by defendant and certain physical evidence obtained as a result of a stop and search conducted by police on 18 July 2007. Following a suppression hearing on 22 September 2008, the trial court denied the motion. In its order following the suppression hearing, the trial court made the following findings of fact:
1. On July 18, 2007, Detective Randy Gardner of the Huntersville Police Department had contact with a registered confidential informant [("CI")]. Detective Gardner authorized the CI to purchase 1/4 kilogram of cocaine for $6,500 from a Hispanic man known only as "Ortega."
2. The confidential informant spoke by phone with Ortega several times over the next five or six hours, while Detectives Gardner and Freeston monitored their conversations.
3. Ortega told the CI that he would arrive in a vehicle with his girlfriend. The two detectives stationed themselves in the public vehicular area of 9121 Sam Furr Road to wait for Ortega's arrival.
4. After waiting for approximately twenty minutes, Detective Freeston observed a white van driven by a Hispanic female. Two Hispanic men got out of the van and walked to an ATM machine. The CI and Ortega spoke by phone as Ortega and Defendant approached the ATM. Ortega told the CI that he was going to the Food Lion.
5. Ortega and Defendant left the ATM and walked toward the Food Lion. This was in the direction of Detective Gardner's car. The two detectives both exited their cars. As Ortega was approached by Gardner, Defendant turned and walked rapidly into Bojangles.
6. Detective Freeston followed Defendant into Bojangles and grabbed him by the arm before Defendant could enter the men's restroom. Freeston did a protective pat-down of Defendant for safety's sake. He felt a lumpy, plastic grocery bag wrapped around Defendant's torso. He also heard the plastic crinkle.
7. Defendant was subsequently arrested. He made no statements.
From these findings, the trial court concluded "there was probable cause to stop Defendant, to search Defendant, and to arrest him."
Thereafter, defendant pled guilty to two counts of trafficking in cocaine and one count of conspiracy to traffic in cocaine. The trial court sentenced defendant to a minimum term of imprisonment of 70 months and a maximum term of 84 months. Defendant reserved his right to appeal the trial court's order denying his motion to suppress.
On appeal, defendant makes several arguments as to the sufficiency of the trial court's findings of fact. However defendant failed to assign error to any of the trial court's findings of fact, and therefore, they are binding on appeal. State v. Campbell, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724, appeal dismissed, 362 N.C. 364, 664 S.E.2d 311-12 (2008). Our review is limited to whether the trial court's conclusions of law are supported by the trial court's findings of fact. State v. Tadeja, 191 N.C. App. 439, 443, 664 S.E.2d 402, 407 (2008).

II. Motion to Suppress
Defendant first contends that the trial court erred in denying his motion to suppress because the findings of fact do not support the trial court's conclusion that the Detective Freeston had probable cause or even a reasonable suspicion to detain and search him. Further, defendant contends that any probable cause or reasonable suspicion based upon the court's findings of fact would apply only to Ortega and not defendant. We disagree.
Our Supreme Court has held that "`the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity `may be afoot,' even if the officer lacks probable cause.'" State v. Styles, 362 N.C. 412, 423-24, 665 S.E.2d 438, 445 (2008) (quoting United States v. Sokolow, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989)). "The purpose of the officer's frisk or pat-down is for the officer's safety; as such, the pat-down is limited to the person's outer clothing and to the search for weapons that may be used against the officer." State v. Robinson, 189 N.C. App. 454, 458-59, 658 S.E.2d 501, 504 (2008) (citation and quotation marks omitted). Our Supreme Court has determined:
Reasonable suspicion is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence. Only some minimal level of objective justification is required. This Court has determined that the reasonable suspicion standard requires that [t]he stop .. . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. Moreover, [a] court must consider the totality of the circumstancesthe whole picture in determining whether a reasonable suspicion exists.
State v. Barnard, 362 N.C. 244, 247, 658 S.E.2d 643, 645 (citations and quotation marks omitted), cert. denied, ___ U.S. ___, 172 L. Ed. 2d 198 (2008). "Nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124, 145 L. Ed. 2d 570, 576, (2000) (citation omitted).
In the case sub judice, we must consider the totality of the circumstances as demonstrated by the trial court's findings, and considering all of the circumstances, Detective Freeston had a reasonable suspicion to believe that criminal activity was afoot and that defendant could be armed. The uncontested findings show that Detective Gardner was working with a registered confidential informant "to purchase 1/4 kilogram of cocaine for $6,500 from a Hispanic man known only as `Ortega.'" Both Detectives Gardner and Freeston monitored conversations between the informant and Ortega. Ortega told the informant of a specified location to meet, and Detectives Freeston and Gardner stationed themselves at that location. Detective Freeston observed Ortega and defendant arrive in the same vehicle at the location pre-determined by Ortega and the informant. Detective Freeston observed Ortega and defendant get out of the same vehicle and walk together to an ATM. Ortega's movements were confirmed by the informant in communications relayed back to the Detectives. When the Detectives exited their cars, Ortega was approached by Detective Gardner, and defendant "turned and walked rapidly into the Bojangles" restaurant. Detective Freeston then "followed Defendant into Bojangles and grabbed him by the arm before Defendant could enter the men's restroom." Detective Freeston then performed "a protective pat-down of Defendant for safety's sake."
No one particular fact regarding defendant's actions would be sufficient independently to establish reasonable suspicion. State v. Garcia, ___ N.C. App. ___, ___, 677 S.E.2d 555, 559 (2009)(holding that none of the "[f]actors to determine whether reasonable suspicion existed includ[ing] activity at an unusual hour, a suspect's nervousness, presence in a high-crime area, and unprovoked flight" are sufficient independently (citations and quotation marks omitted)). However, considering the totality of the circumstances, "as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training" the above factors suggest that criminal activity was afoot and therefore a reasonable suspicion existed for Detective Freeston to detain and pat down defendant. Barnard, 362 N.C. at 247, 658 S.E.2d at 645; See State v. Willis, 125 N.C. App. 537, 542, 481 S.E.2d 407, 411 (1997) (after noting that the "mere presence of an individual on a corner known for drug activity is insufficient justification for an investigative stop" holding that nevertheless "when an individual's presence at a suspected drug area is coupled with evasive actions, police may form, from those actions, the quantum of reasonable suspicion necessary to conduct an investigatory stop." (citation omitted)).
However, as defendant points out, the trial court only concluded "that there was probable cause to stop Defendant, to search Defendant, and to arrest him[,]" but made no conclusions regarding a reasonable suspicion to stop and pat him down. Defendant implies that the trial court failed to apply the proper reasonable suspicion legal standard in its ruling denying his motion to suppress. Defendant further implies that the trial court applied a probable cause standard to justify Detective Freeston's initial stop and search of defendant and the findings do not support probable cause in this situation. However, our Supreme Court held in State v. Austin:
Assuming arguendo that the trial court's reasoning for denying defendant's motion to suppress was incorrect, we are not required on this basis alone to determine that the ruling was erroneous. State v. Gardner, 316 N.C. 605, 342 S.E. 2d 872 (1986). A correct decision of a lower court will not be disturbed on review simply because an insufficient or superfluous reason is assigned. The question for review is whether the ruling of the trial court was correct and not whether the reason given therefor is sound or tenable. State v. Blackwell, 246 N.C. 642, 644, 99 S.E. 2d 867, 869 (1957). The crucial inquiry for this Court is . . . whether the ultimate ruling was supported by the evidence.
State v. Austin, 320 N.C. 276, 290, 357 S.E.2d 641, 650, cert. denied, 484 U.S. 916, 98 L. Ed. 2d 224 (1987).
Here the trial court's ultimate ruling was denial of defendant's motion to suppress statements made by defendant and certain physical evidence obtained as a result of a stop and search conducted by police on 18 July 2007. As stated above, the findings of fact support a reasonable suspicion to detain and perform a pat-down of defendant, which supports the trial court's ultimate ruling. However, for Detective Freeston to further search defendant beyond a pat-down, he would also need probable cause.
This Court has held that "[i]f during [a] limited weapons search, contraband or evidence of a crime is of necessity exposed, the officer is not required by the Fourth Amendment to disregard such contraband or evidence of crime." Robinson, 189 N.C. App. at 458, 658 S.E.2d at 504 (citation and quotation marks omitted). "Evidence of contraband, plainly felt during a pat-down or frisk, may . . . be admissible, provided the officer had probable cause to believe that the item was in fact contraband." Id. at 458-59, 658 S.E.2d at 504-05 (citations and quotation marks omitted). "When the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that the item may be contraband, probable cause exists." State v. Briggs, 140 N.C. App. 484, 493, 536 S.E.2d 858, 863 (2000) (citing Texas v. Brown, 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514 (1983)). "This Court must consider the totality of the circumstances in determining whether the incriminating nature of the object was immediately apparent and thus, whether probable cause existed to seize it." Robinson, 189 N.C. App. at 459, 658 S.E.2d at 505 (citations and quotation marks omitted). "A probable cause determination does not require hard and fast certainty by the officer but involves more of a common-sense determination considering evidence as understood by those versed in the field of law enforcement." Id. (citations and quotation marks omitted).
The trial court's finding of fact number six provides that when Detective Freeston performed the protective "pat-down" of defendant he "felt a lumpy, plastic grocery bag wrapped around Defendant's torso. He also heard the plastic crinkle."
Given the totality of the circumstances and facts within the knowledge of Detective Freeston, including the surrounding facts regarding the defendant's arrival with and close proximity to Mr. Ortega, defendant's flight into the Bojangles and the location, shape and sound of the grocery bag, would satisfy the requirements for probable cause to search defendant further for contraband. Consequently, defendant's first argument is overruled.

III. Investigatory Detention
Defendant next contends that Detective Freeston's conduct, when he "grabbed [defendant] by the arm in the Bojangles, escorted him outside into the parking lot and immediately searched him," was "more consistent with an arrest [requiring probable cause] than it was with an investigatory detention."
However "when conducting investigative stops, police officers are `authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop.'" Campbell, 188 N.C. App. at 708-09, 656 S.E.2d at 727 (quoting United States v. Hensley, 469 U.S. 221, 235, 83 L. Ed. 2d 604, 616 (1985)). Here the findings state that "Detective Freeston followed Defendant into Bojangles and grabbed him by the arm before Defendant could enter the men's restroom. Freeston did a protective pat-down of Defendant for safety's sake."
Given that Detective Freeston was investigating a transaction to purchase $6,500 worth of cocaine, Detective Freeston was merely "maintain[ing] the status quo" during the course of the stop by not allowing defendant access to the restroom's drains, toilets or trash cans in the Bojangles restaurant in which defendant could have destroyed, disposed of or concealed evidence of drug possession. Id.; See Campbell, 188 N.C. App. at 709-10, 656 S.E.2d at 727 (holding that "[t]he amount of force used to carry out the stop and search must be reasonable, but may include using handcuffs or forcing the detainee to lie down to prevent flight." (citations and quotation marks omitted)). The findings state that Detective Freeston did not go as far as to force defendant to lie down, place him in handcuffs or otherwise place defendant under arrest. The findings state only that defendant was grabbed by the arm and Detective Freeston performed a "pat-down" for weapons, requiring only a reasonable suspicion, and those findings are binding on appeal. Campbell, 188 N.C. App. at 704, 656 S.E.2d at 724. Defendant's argument is overruled. Therefore, the findings of fact fully support the "ultimate ruling" by the trial court denying his motion to suppress. Austin, 320 N.C. at 290, 357 S.E.2d at 650.

IV. Conclusion
For the foregoing reasons, we affirm the trial court's denial of defendant's motion to suppress.
AFFIRMED.
Judges WYNN and BEASLEY concur.
Report per Rule 30(e).